**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | |
|---|---|
| **KIA JACKSON,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **3:22-cv-00111-TES** |
| **BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE,** | |
| *Defendant.* | |

**ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College's Motion to Dismiss [Doc. 8].

**BACKGROUND**

Plaintiff Kia Jackson filed this case on November 8, 2022, claiming that LSU violated Title IX while she temporarily lived in Baton Rouge, Louisiana, and attended law school at the Paul M. Hebert Louisiana State University Law Center ("LSU Law"). [Doc. 1, ¶ 1]. Plaintiff claims that while in Baton Rouge, "Jane and John Doe . . . began to visually and audibly voyeur, harass, and stalk" her. [*Id.* at ¶ 10]. Plaintiff alleges she filed a student grievance report to the LSU Student Advocacy and Accountability

Office. [*Id.* at ¶ 23]. Shortly thereafter, Plaintiff claims LSU officials told her there was

nothing they could do about the alleged harassment. [*Id.* at ¶¶ 27–28]. After ending her

time at LSU Law, Plaintiff moved back to Athens, Georgia. [*Id.* at ¶¶ 13–14]. Plaintiff

contends that "Jane and John Doe" still conduct visual and audial voyeurism at her

home in Athens. [*Id.*].

After Plaintiff filed her Complaint, LSU filed the instant Motion, asking the

Court to dismiss the case for lack of personal jurisdiction and for failure to state a claim.

[Doc. 8].

## **LEGAL STANDARD**[1]

A plaintiff bears the burden of establishing personal jurisdiction over a

defendant. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir. 1994). "For

purposes of resolving a motion to dismiss for lack of personal jurisdiction, the court

generally construes as true the Plaintiff's allegations supporting the existence of

jurisdiction." *Parker v. Brush Wellman, Inc.*, 377 F. Supp.2d 1290, 1304 (N.D. Ga. 2005)

(citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1998)). "[I]f the defendant

controverts the plaintiff's allegations with evidence, the plaintiff, to survive the motion

---

[1] At the outset, the Court acknowledges that LSU is not subject to general jurisdiction in Georgia. General jurisdiction exists when the defendant is at home in the forum state—*i.e.*, he is domiciled there. *See Daimler AG v. Bauman*, 571 U.S. 117 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (explaining that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile," and for a corporation, it is the state of incorporation and principal place of business). Clearly, LSU is only subject to general jurisdiction in Louisiana. Therefore, the Court's analysis focuses entirely on specific jurisdiction.

to dismiss, must produce evidence of his own to make a prima facie jurisdictional showing." *Id.* Where the court does not hold an evidentiary hearing on the matter, Plaintiff must only make a prima facie showing of jurisdiction. *Francosteel*, 19 F.3d at 626. A federal court must have both statutory and constitutional authority to assert jurisdiction over a defendant. *See McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957). In analyzing specific jurisdiction, the Court must first determine whether a defendant is subject to jurisdiction under Georgia's long-arm statute. If so, the Court must then determine if an assertion of jurisdiction would be constitutional. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

Georgia's long-arm statute is enumerated in O.C.G.A. § 9-10-91, which reads, in relevant part:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> (4) Owns, uses, or possesses any real property situated within this state;
> (5) With respect to proceedings for divorce, separate maintenance, annulment, or other domestic relations action or with respect to an independent action for support of dependents, maintains a

matrimonial domicile in this state at the time of the commencement of this action or if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph shall not change the residency requirement for filing an action for divorce; or

(6) Has been subject to the exercise of jurisdiction of a court of this state which has resulted in an order of alimony, child custody, child support, equitable apportionment of debt, or equitable division of property if the action involves modification of such order and the moving party resides in this state or if the action involves enforcement of such order notwithstanding the domicile of the moving party.

After resolving the statutory question, the Court must also ensure that any assertion of personal jurisdiction comports with due process. To do so, the Court must first decide whether the defendant has "minimum contacts" with the forum state—in this case, Georgia. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74 (1985). To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must (1) be related to plaintiff's cause of action; (2) involve some act of "purposeful availment" by the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being "haled into court there." *Francosteel*, 19 F.3d at 627. Second, the court must determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

## DISCUSSION

Plaintiff argues that personal jurisdiction is proper over LSU because LSU is an arm of the state of Louisiana, and Louisiana, under its Constitution, "consented to suit

4

and liability."[2] [Doc. 9-1, p. 6]. Therefore, as Plaintiff's argument goes, a federal court—as a neutral court—has "jurisdiction" to hear a Title IX claim. [*Id.*]. In the alternative, Plaintiff argues that LSU has voluntary affiliations within Georgia, so it has "purposefully availed itself of the privilege of conducting activities in the State of Georgia invoking the benefits and protections of the laws in the State of Georgia." [*Id.*]. None of these arguments carry Plaintiff's burden of proving that this Court has personal jurisdiction over LSU.

### I.    Georgia's Long-Arm Statute

As outlined above, Plaintiff first must show that personal jurisdiction is proper under Georgia's long-arm statute. Based on Plaintiff's filings, it appears she is relying on O.C.G.A. § 9-10-91(1) and/or (3). Under § 9-10-91(1), Plaintiff needed to show that LSU transacts business in Georgia. However, for § 9-10-91(3), Plaintiff needed to allege facts showing LSU "commit[ed] a tortious injury in this state caused by an act or omission outside this state" *and* that LSU "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." However, Plaintiff failed to make either showing.

Based on the text of the statute and related caselaw, Plaintiff needed to show

---

[2] The Court notes that no one disputes subject-matter jurisdiction in this case. However, Plaintiff's Response seems to conflate subject-matter jurisdiction with personal jurisdiction.

more than mere business or transactions between LSU and Georgia residents. Instead, she needed to show that her claim "arises from or is connected with such [an] act or transaction." *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006). Put another way, Plaintiff needed to show that her Title IX claim arose out of LSU's business dealings with Georgia. *See Int'l Cap. Realty Inv. Co. v. West*, 507 S.E.2d 545, 549 (Ga. Ct. App. 1998) ("Jurisdiction must be predicated on the existence of ties among the defendants, [Georgia], and the litigation."); *Marbury v. Marbury*, 352 S.E.2d 564, 567 (Ga. 1987) ("[T]here must be a substantial connection between defendant's activities in the forum and the subject matter of the suit.").

Based on the clear reading of Plaintiff's Complaint, she does not allege facts remotely close to such a conclusion. Instead, Plaintiff's Complaint alleges that LSU acted—or failed to act—on her grievances filed with the Student Advocacy and Accountability Office, all while she lived in Baton Rouge. There is nothing in Plaintiff's Complaint or Response to this Motion that implicates any of LSU's business-related activities—*in Georgia*—giving rise to her Title IX claim. Instead, it seems that Plaintiff relies on LSU's nationwide recruitment of students. However, Plaintiff cannot rely upon LSU's generalized, intermittent and varying contacts with Georgia to create a basis for specific jurisdiction over her Title IX claim.

Indeed, even accepting Plaintiff's claims that Jane and/or John Doe (whoever they might be) continue to stalk or harass her—actions that could arise under privacy-

related torts—those claims still do not lead to a proper exercise of jurisdiction over LSU. Plaintiff does not allege that LSU employed Jane or John Doe or that LSU has held them out to be its agents in any way. Without some articulated relation to LSU, allegations about anonymous persons just can't carry the jurisdictional day. See *Balmer v. Elan Corp.*, 546, 583 S.E.2d 131, 134 (Ga. Ct. App. 2003) ("For OCGA § 9–10–91 to confer extraterritorial jurisdiction over a foreign corporation, it is essential that there has occurred a tortious act in Georgia *by such foreign corporation*; there has been none.") (emphasis added).

In sum, the only connections tying LSU, Plaintiff's Title IX claim, and Georgia are Plaintiff's unilateral acts of moving back to Athens and filing suit in Georgia courts.[3] Those acts cannot suffice to establish personal jurisdiction under Georgia law. *McDonnell v. Roy E. Beatty & Assocs., Inc.*, 418 S.E.2d 95, 97 (Ga. Ct. App. 1992) ("Jurisdiction is not appropriate where, as here, the nonresident defendant's only connection with the state was due to the unilateral acts of the plaintiff."). Accordingly, Georgia's long-arm statute cannot serve as any basis for the Court to exercise personal jurisdiction over LSU.

## II.    Due Process

Even if Georgia's long-arm statute were to technically permit this Court to

---

[3] Plaintiff filed a nearly identical complaint in the State Court of Athens-Clarke County, Georgia, on April 10, 2020. [Doc. 8-2]. On October 7, 2022, that court dismissed Plaintiff's case for lack of personal jurisdiction. [Doc. 8-3].

exercise personal jurisdiction over LSU, any such assertion of jurisdiction must also comply with the Fourteenth Amendment's Due Process Clause. It clearly does not.

First, as outlined above, Plaintiff needed to show that her claims "arise out of or relate to" at least one of LSU's contacts with the forum. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). To do so, the Court looks to the "affiliation between the forum and the underlying controversy," focusing on any "activity or . . . occurrence that [took] place in the forum State." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018). If there is no such connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Accordingly, and as LSU correctly points out, the question is not whether it has *any* contacts with the State of Georgia, but rather if LSU has *sufficient* contacts with Georgia *related to Plaintiff's claims* such that personal jurisdiction would be appropriate. [Doc. 8-1, p. 9–10]. Indeed, LSU does have contacts with the State of Georgia—as any other large university in America would. But numerous courts have held that such contacts are not "continuous and systematic" enough so as to confer personal jurisdiction on a court in that state.[4] *See, e.g., Warren v. Univ. of Illinois-Champaign/Urbana*, No. 19-4094-SAC-ADM, 2020 WL 1043637, at *2 (D. Kan. Mar. 4,

---

[4] To be sure, it is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff" when considering the defendant's relationship with the forum. *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Rather, courts must be mindful that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

2020) (collecting cases); *Richards v. Duke Univ.,* 480 F. Supp. 2d 222, 230 (D.D.C. 2007)

("Generally, colleges and universities are not subject to personal jurisdiction in all states

from which their students hail, as this would unfairly expose them to litigation in many

distant forums."); *Bonavito v. President & Fellows of Harvard Coll.*, No.

CV2014657MASDEA, 2021 WL 2722578, at *3 (D.N.J. June 30, 2021) ("Plaintiff cannot

establish that this Court has personal jurisdiction over Defendant based on its

university-like activities in New Jersey and advertisements that anyone, in any

jurisdiction, can access and view.").

    Plaintiff offers no significant argument related to LSU's supposed minimum

contacts with Georgia aside from her bare legal conclusions. [Doc. 9-1, p. 8 ("The

Plaintiff asserts that the activity of the Defendant within the State of Georgia are

sufficient to support minimum contacts if required as the Defendant has deliberately

engaged in significant activities and created continuing obligations between itself and

residents of the State of Georgia.")]. Instead, Plaintiff doubles-down on the theory that

LSU's acts or omissions in Baton Rouge caused her injury in Georgia, which she asserts

is enough for the Court to exercise jurisdiction. [*Id.* ("Plaintiff alleges that discrimination

committed by failing to act in accordance with impositions under Title IX done by

individuals and responsible persons employed by LSU and the LSU Law Center in

Baton Rouge, Louisiana caused the Plaintiff to sustain injuries in Georgia.")].

    Those assertions are not enough to establish the requisite connection between

LSU, Plaintiff's claims, and Georgia such that this Court can exercise its jurisdiction over LSU. *See Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) ("In other words, our inquiry must focus on the direct causal relationship among the defendant, the forum, and the litigation."); *Walden*, 571 U.S. at 286 ("Mere injury to a forum resident is not a sufficient connection to the forum."). Plaintiff failed to show a "sufficient nexus between [LSU's] contacts and the litigation," so there can be no specific jurisdiction. *Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1337 (N.D. Ga. 2018).

Let's sum this up. Assuming that some anonymous people (who are not defendants) stalked or harassed Plaintiff in Baton Rouge, Louisiana, while she attended LSU's law school more than three years ago, LSU could not reasonably foresee that it could be haled into court in Athens, Georgia, for the alleged stalking or harassment. To allow that would unquestionably violate all notions of fair play and substantial justice.

## CONCLUSION

In all, Plaintiff failed to show that LSU has sufficient connections—specifically related to her claim—with the State of Georgia that would allow this Court to properly, and constitutionally, exercise personal jurisdiction over LSU. Therefore, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 8] and **DISMISSES** Plaintiff's Complaint [Doc. 1] for lack of jurisdiction.

[*signature and date on following page*]

**SO ORDERED**, this 22nd day of March, 2023.

S/ Tilman E. Self, III
_____
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**